Michael Faillace [MF-8436]
Michael Faillace & Associates, P.C.
60 East 42nd Street, Suite 2540
New York, New York 10165
(212) 317-1200
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X
LUIS PASCUAL NUGZHI GUARACA, *individually*
*and on behalf of others similarly situated,*

                *Plaintiff,*

          -against-

CAFETASIA INC. (d/b/a SOMTUM DER),
GRAMERCY THAI INC. (d/b/a LANTERN THAI
KITCHEN), N AMJIT INC. (d/b/a Cafetasia), THAI
MONTAGUE, INC. (d/b/a LANTERN THAI
KITCHEN), SOPANUT SOPOCHANA, KITTIGRON
LIRTPANARUK, PHAKPHOOM SIRISUWAT,
SUPANEE KITMAHAWONG, and KEVIN
LEAPAGERS

              *Defendants.*
--------------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

Plaintiff Luis Pascual Nugzhi Guaraca, individually and on behalf of others similarly situated ("Plaintiff Pascual" or "Mr. Pascual"), by and through his attorneys, Michael Faillace & Associates, P.C., upon information and belief, and as against each of Defendants Cafetasia Inc. (d/b/a Somtum Der), Gramercy Thai Inc. (d/b/a Lantern Thai Kitchen), Namjit Inc. (d/b/a Cafetasia), Thai Montague, Inc. (d/b/a Lantern Thai Kitchen) ("Defendant Corporations"), Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers (collectively, "Defendants"), allege as follows:

## **NATURE OF ACTION**

1.     Plaintiff Pascual is a former employee of Defendants Cafetasia Inc. (d/b/a Somtum Der), Gramercy Thai Inc. (d/b/A LANTERN THAI KITCHEN), Namjit Inc. (d/b/a Cafetasia), Thai Montague, Inc. (d/b/a LANTERN THAI KITCHEN), Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers.

2.     Defendants own(ed), operate(d)and/or control(led) four Thai restaurants located at 85 Avenue A ground floor, New York, NY 10009 under the name Somtum Der (hereinafter "the Avenue A location"), 311 Second Avenue, New York, NY 10003 under the name  Lantern Thai Kitchen (hereinafter "the Second Avenue location"), 101 Montague Street, Brooklyn, NY 11201 under the name Lantern Thai Kitchen (hereinafter "the Montague Street location") and 38 E. 8th street, New York, NY 10003, under the name Cafetasia (hereinafter "the 8th Street location") respectively.

3.     Upon information and belief, Defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers serve or served as owners, managers, principals or agents of Defendant Corporations and through these corporate entities operate or operated the restaurants.

4.     Plaintiff Pascual is a former employee of Defendants.

5.     Plaintiff Pascual was employed as a dishwasher, food preparer and ostensibly as a delivery worker; however, when ostensibly employed as a delivery worker, he was required to spend several hours each day performing non-tipped duties unrelated to deliveries including, cutting meat and vegetables, acting as porter for all the restaurants, taking out the garbage,

carrying down and stocking deliveries, bringing up food and other items from the basement, preparing food and buying or picking up food and other items at Canal Street (hereinafter non-tip/non-delivery duties).

6.      Plaintiff Pascual regularly worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that he worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiff Pascual appropriately for his hours worked, either at the straight rate of pay, or for any additional overtime premium.

8.      Further, Defendants failed to pay Plaintiff Pascual the required "spread of hours" pay for any day in which he worked over 10 hours.

9.      Defendants employed and accounted for Plaintiff Pascual as a delivery worker in their payroll, but in actuality his duties included several hours spent performing the non-delivery, non-tipped functions such as those alleged above.

10.     At all times, regardless of duties, Defendants paid Plaintiff Pascual and all other delivery workers at the lowered tip-credited rate.

11.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff Pascual's non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) *(12 N.Y.C.R.R. § 146)*.

12.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff Pascual's actual duties in payroll records to avoid paying Plaintiff Pascual at the minimum wage rate, and to enable them to pay Plaintiff Pascual at the lower tip-credited rate by designating him as a delivery worker instead of a non-tipped employee.

3

13.    Defendants' conduct extended beyond Plaintiff Pascual to all other similarly situated employees.

14.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Pascual and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

15.    Plaintiff Pascual now brings this action on behalf of himself, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), the New York Labor Law ("NYLL") §§190 and 650 *et seq*., and the "overtime wage order" codified at N.Y. COMP. CODES R. & REGS. Tit. 12 §§ 142-2.2, 2.4 (2006), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

16.    Plaintiff Pascual seeks certification of this action as a collective action on behalf of himself, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1531 (interstate commerce) and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiff Pascual's state law claims is conferred by 28 U.S.C. § 1367(a).

18.    Venue is proper in this district under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their businesses in this district, and Plaintiff Pascual was employed by Defendants in this district.

**PARTIES**

*Plaintiff*

19.    Plaintiff Luis Pascual Nugzhi Guaraca ("Plaintiff Pascual" or "Mr. Pascual") is an adult individual residing in Bronx County, New York.

20.    Plaintiff Pascual was employed by Defendants from approximately September 2012 until on or about February 7, 2017.

21.    Plaintiff Pascual consents to being a party pursuant to 29 U.S.C. § 216(b), and brings these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

22.    Defendants own(ed), operate(d), and/or control(led) four Thai restaurants located at 85 Avenue A ground floor, New York, NY 10009 under the name "Somtum Der," 311 Second Avenue, New York, NY 10003 under the name "Lantern Thai Kitchen," 101 Montague Street, Brooklyn, NY 11201 under the name "Lantern Thai Kitchen" and 38 E. 8th street, New York, NY 10009 under the name "Cafetasia" at all times relevant to this complaint.

23.    Upon information and belief, Cafetasia Inc. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 85 Avenue A ground floor New York, N.Y. 10003.

24. Upon information and belief, Gramercy Thai Inc. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 311 Second Avenue, New York, N.Y. 10003.

25. Upon information and belief, Namjit Inc. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 38 E. 8th street New York, N.Y. 10003.

26. Upon information and belief, Thai Montague, Inc. is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintained its principal place of business at 101 Montague street Brooklyn, N.Y. 11201.

27. Defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers are individuals engaging in business within this judicial district during the relevant time period. Defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers are sued individually in their capacity as owners, officers and/or agents of Defendant Corporations.

28. Defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers possess operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or control significant functions of Defendant Corporations. Defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers determine the wages and compensation of the employees of Defendants, including Plaintiff Pascual, and establish the schedules of the employees, maintain employee records, and have the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

29.     Defendants operate(d) four Thai restaurants located at various locations in Manhattan and Brooklyn.

30.     Individual defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers possess operational control over Defendant Corporations, possess an ownership interest in Defendant Corporations, and control significant functions of Defendant Corporations.

31.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method and share control over the employees.

32.     Each defendant possessed substantial control over Plaintiff Pascual's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff Pascual, and all similarly situated individuals, referred to herein.

33.     Defendants jointly employed Plaintiff Pascual, and all similarly situated individuals, and are Plaintiff Pascual's (and all similarly situated individuals) employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

34.     In the alternative, Defendants constitute a single employer of Plaintiff Pascual and/or similarly situated individuals.

35.     Upon information and belief, individual defendants Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leapagers operated

7

Defendant Corporations as either alter egos of themselves, and/or fail to operate Defendant Corporations as legal entities separate and apart from themselves by, among other things:

(a) failing to adhere to the corporate formalities necessary to operate Defendant Corporations as separate and legally distinct entities;

(b) defectively forming or maintaining Defendant Corporations by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

(c) transferring assets and debts freely as between all Defendants;

(d) operating Defendant Corporations for their own benefit as the sole or majority shareholders;

(e) operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations or closely controlled entities;

(f) intermingling assets and debts of their own with Defendant Corporations;

(g) diminishing and/or transferring assets of Defendant Corporations to protect their own interests; and

(h) other actions evincing a failure to adhere to the corporate form.

36. At all relevant times, Defendants were Plaintiff Pascual's employers within the meaning of the FLSA and NYLL.

37.     Defendants had the power to hire and fire Plaintiff Pascual, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff Pascual's services.

38.     In each year from 2012 to 2017, Defendants, both individually and jointly, had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.     In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. For example, numerous items that were used in the Thai restaurants on a daily basis were produced outside of the State of New York.

*Individual Plaintiff*

40.     Plaintiff Pascual is a former employee of Defendants, who was employed as a dishwasher, food preparer and ostensibly employed as a delivery worker. However, while ostensibly employed as a delivery worker he spent more than 20% of his work day performing the non-delivery, non-tip duties outlined above.

41.     Plaintiff Pascual seeks to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

*Plaintiff Luis Pascual Nugzhi Guaraca*

42.     Plaintiff Pascual was employed by Defendants from approximately September 2012 until on or about February 7, 2017.

43.     At all relevant times, Plaintiff Pascual was employed by Defendants as a dishwasher, food preparer and ostensibly as a delivery worker.

44.     However, when ostensibly employed as a delivery worker, Plaintiff Pascual was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

45.     Although Plaintiff Pascual was ostensibly employed as a delivery worker, he spent over 20% of each day performing non-delivery work throughout his employment with Defendants.

46.     Plaintiff Pascual regularly handled goods in interstate commerce such as cooking supplies.

47.     Plaintiff Pascual's work duties required neither discretion nor independent judgment.

48.     Throughout his employment with Defendants, Plaintiff Pascual regularly worked in excess of 40 hours per week.

49.     From approximately December 2012 until on or about June 2013, Plaintiff Pascual worked as a dishwasher at the Avenue A location from approximately 11:00 a.m. until on or about 11:15 p.m., on Thursdays and from approximately 5:00 p.m. until on or about 11:15 p.m. four days a week (typically 36.75 hours per week).

50.     From approximately July 2013 until on or about July 2014, Plaintiff Pascual worked at the Avenue A location from approximately 11:00 a.m. until on or about 11:30 p.m. five days a week, from approximately 11am to 4pm on Fridays, and at the Second Avenue location from approximately 5:00 p.m. until on or about 11:30 p.m. one day a week (typically 73 hours per week).

51.     For a period of one month in August 2014, Plaintiff Pascual worked at the 8th Street location from approximately 11:00 a.m. until on or about 11:30 p.m. three days a week and from approximately 11:00 a.m. until on or about 10:30 p.m. four days a week (typically 83.5 hours per week).

52.     From approximately September 2014 until on or about March 2015, Plaintiff Pascual worked at the Avenue A location from approximately 11:00 a.m. until on or about 11:30 p.m. five days a week and on Wednesdays from 5pm to 11:30pm at the Second Avenue location (typically 68 hours per week).

53.     From approximately April 2015 until on or about January 2016, Plaintiff Pascual worked at the Avenue a location from approximately 11:00 a.m. until on or about 11:30 p.m. Thursdays, Saturdays and Sundays and at the Second Avenue location from approximately 5:00 p.m. until on or about 12:20 a.m. Mondays and Wednesdays, from approximately 11:00 a.m. until on or about 11:20 p.m. on Tuesdays and from approximately 11:00 a.m. until on or about 4:20 p.m. on Fridays (typically 69 hours per week).

54.     From approximately January 2016 until on or about March 2016, Plaintiff Pascual worked at the Avenue A location from approximately 11:00 a.m. until on or about 11:30 p.m. Mondays, Thursdays, Fridays, Saturdays and Sundays and at the Second Avenue location from approximately 11:00 a.m. until on or about 11:30 p.m. on Tuesdays (typically 74 hours per week).

55.     From approximately March 2016 until on or about September 2016, Plaintiff Pascual worked at the Avenue A location from approximately 12:00 p.m. until on or about 12:20 a.m. on Mondays, Thursdays, Fridays and Saturdays, at the Second Avenue location from

approximately 11:00 a.m. until on or about 11:30 p.m. on Tuesdays and at the Montague Street location from approximately 11:00 a.m. until on or about 11:30 p.m. on Sundays. (typically 75 hours per week).

56. From approximately September 2016 until on or about December 2016, Plaintiff Pascual worked at the Avenue A location from approximately 12:00 p.m. until on or about 12:30 a.m. Mondays, Wednesdays, Thursdays, Fridays and Saturdays and at the Second Avenue location from approximately 11:00 a.m. until on or about 11:30 p.m. on Tuesdays (typically 75 hours per week).

57. From approximately January 2017 until on or about February 7, 2017, Plaintiff Pascaul worked at the Avenue A location from approximately 12:00 p.m. until on or about 11:30 p.m. Mondays and Wednesdays, from approximately 11:00 a.m. until on or about 11:30 p.m. on Tuesdays at the Second Avenue location and from approximately 5:00 p.m. until on or about 10:30 p.m. on Sundays and at the Avenue A location from approximately 4:00 p.m. until on or about 11:30 p.m. Thursdays and Fridays and from approximately 12:00 p.m. until on or about 11:30 p.m. on Saturdays (typically 74.5 hours per week).

58. From approximately September 2012 until on or about March 2016, Plaintiff Pascual was paid his wages in cash.

59. From approximately March 2016 until on or about February 7, 2017, Plaintiff Pascual was paid his wages in a combination of cash and check.

60. From approximately December 2012 until on or about June 2013, Plaintiff Pascual was paid an hourly rate of $5.00 at the Avenue A location.

61.     From approximately July 2013 until on or about July 2014, Plaintiff Pascual was paid an hourly rate of $5.65 at the Avenue A and Second avenue locations.

62.     For the month of August 2014, Plaintiff Pascual worked at the 8th street location and was paid an hourly rate of $7.25 an hour for the one day he did delivery work and was paid $480 a week for the remaining 6 days a week he worked.

63.     From approximately September 2014 until on or about March 2015, Plaintiff Pascual was paid $8.00 per hour at the Avenue A and Second Avenue locations.

64.     From approximately April 2015 until on or about January 2016, Plaintiff Pascual was paid $8.75 per hour at the Avenue A location, and $6.65 per hour at the Second Avenue location.

65.     From approximately January 2016 until on or about January 2017, Plaintiff Pascual was paid $9.00 per hour at the Avenue A location.

66.     From approximately March 2016 until on or about September 2016, Plaintiff Pascual was paid $7.50 per hour at the Montague street location.

67.     From approximately March 2016 until on or about December 2016, Plaintiff Pascual was paid $7.50 per hour at the Second Avenue location.

68.     From approximately January 2017 until on or about February 7, 2017, Plaintiff Pascual was paid $11.00 per hour at the Avenue A location and $7.50 per hour at the Second Avenue location.

69.     Defendants never notified Plaintiff Pascual that his tips were being included as an offset for wages.

70.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Pascual's wages.

71.     Defendants did not provide Plaintiff Pascual with an accurate statement of wages with each payment of wages, as required by NYLL 195(3).

72.     Plaintiff Pascual was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

73.     Defendants never provided Plaintiff Pascual with a written notice, in English and Spanish (Plaintiff Pascual's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

74.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Pascual regarding overtime and wages under the FLSA and NYLL.

*Defendants' General Employment Practices*

75.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff Pascual to work in excess of 40 hours per week without paying him appropriate minimum wage, overtime, and spread of hours compensation, as required by federal and state laws.

76.     As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiff Pascual by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL.

77.     Defendants failed to inform Plaintiff Pascual that they intended to take a deduction against Plaintiff Pascual's earned wages for tip income, as required by the NYLL before any

14

deduction may be taken.

78.     Defendants failed to inform Plaintiff Pascual that his tips would be credited towards the payment of the minimum wage.

79.     Defendants failed to maintain a record of tips earned by Plaintiff Pascual for the deliveries he made to customers.

80.     Defendants paid Plaintiff Pascual in cash or in a combination of check and cash.

81.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

82.     By employing this practice, Defendants avoided paying Plaintiff Pascual at the minimum wage and at the overtime rate of time and a half for most or all of his hours worked in excess of forty (40) hours per week.

83.     Defendants failed to post required wage and hour posters in the restaurant, and did not provide Plaintiff Pascual with statutorily required wage and hour records or statements of pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiff Pascual's relative lack of sophistication in wage and hour laws.

84.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiff Pascual (and similarly situated individuals) worked, and to avoid paying Plaintiff Pascual  properly for (1) his full hours worked (2)  overtime due and (3) spread of hours.

85.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employee compensation by knowingly violating the FLSA

and NYLL.

86.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff Pascual and other similarly situated current and former delivery workers.

87.     Defendants failed to provide Plaintiff Pascual and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

88.     Defendants failed to provide Plaintiff Pascual and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language of Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

89.     Plaintiff Pascual brings his FLSA minimum wage, overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

90.     At all relevant times, Plaintiff Pascual  and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wage, overtime pay of one and one-half times their regular rates for work in excess of forty (40) hours per workweek under the FLSA, willfully taking improper wage deductions and other improper credits against their wages for which Defendants did not qualify under the FLSA, and willfully failing to keep records required by the FLSA.

91.     The claims of Plaintiff Pascual stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

92.     Plaintiff Pascual repeats and realleges all paragraphs above as though fully set forth herein.

93.     At all times relevant to this action, Defendants were Plaintiff Pascual's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

94.     Defendants had the power to hire and fire Plaintiff Pascual, controlled his terms and conditions of employment, and determined the rate and method of any compensation.

95.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

96.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

97.     Defendants failed to pay Plaintiff Pascual at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

98.     Defendants' failure to pay Plaintiff Pascual at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

99.     Plaintiff Pascual was damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

100.     Plaintiff Pascual repeats and realleges all paragraphs above as though fully set forth herein.

101.     At all times relevant to this action, Defendants were Plaintiff Pascual's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiff Pascual, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

102.     At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

103.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

104. Defendants, in violation of 29 U.S.C. § 207 (a)(1), failed to pay Plaintiff Pascual overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

105. Defendants' failure to pay Plaintiff Pascual overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

106. Plaintiff Pascual was damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

107. Plaintiff Pascual repeats and re-alleges all paragraphs above as though fully set forth herein.

108. At all times relevant to this action, Defendants were Plaintiff Pascual's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff Pascual, controlled his terms and conditions of employment, and determined the rates and methods of any compensation in exchange for his employment.

109. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Pascual less than the minimum wage.

110. Defendants' failure to pay Plaintiff Pascual the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

111. Plaintiff Pascual was damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

19

112.     Plaintiff Pascual repeats and realleges all paragraphs above as though fully set forth herein.

113.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor, failed to pay Plaintiff Pascual  overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

114.     Defendants' failure to pay Plaintiff Pascual overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

115.     Plaintiff Pascual was damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

116.     Plaintiff Pascual repeats and realleges all paragraphs above as though fully set forth herein.

117.     Defendants failed to provide Plaintiff Pascual with a written notice, in English and in Spanish (Plaintiff Pascual's primary language), of his rate of pay, regular pay day, and such other information as required by NYLL §195(1).

118.     Defendants are liable to Plaintiff Pascual in the amount of $5,000, together with costs and attorneys' fees.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

119.     Plaintiff Pascual repeats and realleges all paragraphs above as though set forth fully herein.

120.    Defendants did not provide Plaintiff Pascual with wage statements upon each payment of wages, as required by NYLL 195(3).

121.    Defendants are liable to Plaintiff Pascual in the amount of $5,000, together with costs and attorneys' fees.

**SEVENTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMISSIONER OF LABOR**

122.    Plaintiff Pascual repeats and realleges all paragraphs above as though fully set forth herein.

123.    Defendants failed to pay Plaintiff Pascual  one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiff Pascual 's spread of hours exceeded ten hours in violation of NYLL §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 142-1.6.

124.    Defendants' failure to pay Plaintiff Pascual  an additional hour's pay for each day Plaintiff Pascual 's spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

125.    Plaintiff Pascual was damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Pascual respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the

pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the

FLSA claims in this action;

(b)     Declaring that Defendants violated the minimum wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiff Pascual and the FLSA class

members;

(c)     Declaring that Defendants violated the overtime wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiff Pascual  and the FLSA class

members;

(d)     Declaring that Defendants violated the recordkeeping requirements of, and

associated rules and regulations under, the FLSA with respect to Plaintiff Pascual's, and the

FLSA class members', compensation, hours, wages, and any deductions or credits taken against

wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful

as to Plaintiff Pascual  and the FLSA class members;

(f)     Awarding Plaintiff Pascual and the FLSA class members damages for the amount

of unpaid minimum and overtime wages, and damages for any improper deductions or credits

taken against wages under the FLSA, as applicable;

(g)     Awarding Plaintiff Pascual liquidated damages in an amount equal to one hundred

percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL §

663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(h)     Awarding Plaintiff Pascual and the FLSA class members liquidated damages in

an amount equal to 100% of his damages for the amount of unpaid overtime wages, and damages

for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

        (i)        Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff Pascual  and the members of the FLSA Class;

        (j)        Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiff Pascual  and the members of the FLSA Class;

        (k)        Declaring that Defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiff Pascual's, and the FLSA Class members', compensation, hours, wages, and any deductions or credits taken against wages;

        (l)        Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff Pascual  and the FLSA Class members;

        (m)        Declaring that Defendants violated NYLL §196-d.

        (n)        Awarding Plaintiff Pascual and the FLSA class members damages for the amount of unpaid minimum wage, spread of hours pay and overtime compensation , as well as  damages for any improper deductions or credits taken against wages;

        (o)        Awarding Plaintiff Pascual  damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b) and 198(1-d);

        (p)        Awarding Plaintiff Pascual and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(q)     Awarding Plaintiff Pascual  and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(r)     Awarding Plaintiff Pascual  and the FLSA class members pre-judgment and post-judgment interest as applicable;

(s)      Awarding Plaintiff Pascual  and the FLSA class members the expenses incurred in this action, including costs and attorneys' fees;

(t)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(u)     All such other and further relief as the Court deems just and proper.

JURY DEMAND

Plaintiff Pascual demands a trial by jury on all issues triable by a jury.


Dated: New York, New York
          February 28, 2017

MICHAEL FAILLACE & ASSOCIATES, P.C.


_____/s/ Michael Faillace_____
By:     Michael A. Faillace [MF-8436]
          60 East 42nd Street, Suite 2540
          New York, New York 10165
          (212) 317-1200
          *Attorneys for Plaintiff*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2020
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

February 8, 2017

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luis Pascual Nugzhi Guaraca

                                  Michael Faillace & Associates, P.C.

Legal Representative / Abogado:

Signature / Firma:                *[signature]*

Date / Fecha:                     08 de febrero de 2017

*Certified as a minority-owned business in the State of New York*