UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
LUIS PASCUAL NUGZHI GUARACA, :
*individually and on behalf of others similarly* :
*situated*, :
: 17-CV-1516 (VSB)
Plaintiff, :
: **OPINION & ORDER**
- against - :
:
:
CAFETASIA INC. (d/b/a SOMTUM DER), :
GRAMERCY THAI INC. (d/b/a LANTERN :
THAI KITCHEN), NAMJIT INC. (d/b/a :
CAFETASIA), THAI MONTAGUE, INC. :
(d/b/a LANTERN THAI KITCHEN), :
SOPANUT SOPOCHANA, KITTIGRON :
LIRTPANARUK, PHAKPHOOM :
SIRISUWAT, SUPANEE KITMAHAWONG, :
and KEVIN LEAPAGERS, :
:
Defendants. :
:
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/20/2018

Appearances:

Joshua S. Androphy
Michael A. Faillace
Michael Faillace & Associates, P.C.
New York, New York
*Counsel for Plaintiff*

Oscar Michelen
Cuomo LLC
Mineola, New York

Konstantinos Kapatos
William Schwitzer & Associates
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

  Plaintiff Luis Pascual Nugzhi Guaraca brings this action alleging violations of the Fair

Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against Defendants Cafetasia Inc., Gramercy Thai, Inc., Namjit Inc., Thai Montague, Inc. (the "Corporate Defendants"), Sopanut Sopochana, Kittigron Lirtpanaruk, Phakphoom Sirisuwat, Supanee Kitmahawong, and Kevin Leathers (sued herein as "Kevin Leapagers") (the "Individual Defendants"). Before me is the motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and the motion to sever pursuant to Federal Rules of Civil Procedure 21 and 42 of Defendants Gramercy Thai, Inc., Namjit Inc., Thai Montague, Inc., Sopanut Sopochana, Kittigron Lirtpanaruk, and Kevin Leathers (the "Moving Defendants"). For the reasons stated below, the Moving Defendants' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART and Moving Defendants' motion to sever is DENIED.

I. **Background**

Defendants Kitmahawong and Sirisuwat each own 50% of Defendants Cafetasia, Inc. and Gramercy Thai, Inc. (Counter 56.1 ¶ 2; Kitmahawong Aff. ¶ 2; Sirisuwat Aff. ¶ 2.)[1] Defendant Cafetasia, Inc. operates a restaurant named Somtum Der,[2] (Guaraca Decl. ¶ 2),[3] and Defendant Gramercy Thai, Inc. operates the Second Avenue location of a restaurant named Lantern

---

[1] "Counter 56.1" refers to Plaintiffs' Rule 56.1 Counter-Statement, filed January 23, 2018. (Doc. 52.) For ease of reference, I refer to this submission because it incorporates the substance of Moving Defendants' FRCP 56.1 Statement, (Doc. 47). Unless otherwise indicated, references to Plaintiff's Counter 56.1 indicate undisputed facts.

"Kitmahawong Aff." refers to the Affidavit of Defendant Supanee Kitmahawong, filed July 15, 2017 as Exhibit L to the Affirmation in Support of Oscar Michelen. (Doc. 44-11.) "Sirisuwat Aff." refers to the Affidavit of Defendant Phakphoom Sirisuwat, filed July 15, 2017 as Exhibit M to the Affirmation in Support of Oscar Michelen. (Doc. 44-12.)

[2] At the time Plaintiff was hired, the restaurant was called Lantern. During the span of his employment, it changed its name to Somtum Der. (Guaraca Decl. ¶ 24 n.2.)

[3] "Guaraca Decl." refers to the Declaration of Luis Pascual Nugzhi Guaraca in Opposition to Defendants' Motion for Summary Judgment and to Sever, filed January 23, 2018. (Doc. 53.)

2

("Lantern Second Avenue"), (Counter 56.1 ¶ 3). Defendant Kitmahawong is the sole owner of Defendant Namjit, Inc., which operates a restaurant called Kiin.[4] (*Id.* ¶¶ 6–7.) Defendant Sirisuwat is the sole owner of Defendant Thai Montague, Inc., which operates the Montague Street location in Brooklyn of a restaurant named Lantern ("Lantern Montague"). (*Id.* ¶¶ 10–11). During all relevant periods, each of the Corporate Defendants had separate bank accounts, kept separate payroll records, and had separate Federal Employment Identification Numbers. (*Id.* ¶¶ 4, 8, 12; Kitmahawong Aff. ¶ 5; Sirisuwat Aff. ¶ 5.)

Plaintiff was employed by one or more of the Corporate Defendants between late 2012 and February 2017. (Guaraca Decl. ¶¶ 2–4.) The precise dates are disputed, (*compare id.* ¶¶ 4–12, *to* Kitmahawong Aff. ¶¶ 8–11, *and* Sirisuwat Aff. ¶¶ 8–11), but Plaintiff worked at Somtum Der from approximately December 2012 or January 2013 until approximately February 2017, (Guaraca Decl. ¶¶ 4–12; Kitmahawong Aff. ¶ 8; Sirisuwat Aff. ¶ 8), at Lantern Second Avenue from approximately 2013 or 2014 until approximately February 2017, (Guaraca Decl. ¶¶ 5–12; Kitmahawong Aff. ¶ 9; Sirisuwat Aff. ¶ 9), and at Lantern Montague from approximately February or March 2016 until approximately September 2016, (Guaraca Decl. ¶ 10; Kitmahawong Aff. ¶ 11; Sirisuwat Aff. ¶ 11). Plaintiff claims that during the month of August 2014, he worked only at Kiin, (Guaraca Decl. ¶ 6), but Defendants Kitmahawong and Sirisuwat assert that Plaintiff only worked at Kiin during one week in January 2016, (Kitmahawong Aff. ¶ 10; Sirisuwat Aff. ¶ 10). Plaintiff was always paid separately by the appropriate Corporate Defendant for the work he performed at each restaurant, and his hours were never combined for purposes of calculating overtime. (Counter 56.1 ¶ 13; Guaraca Decl. ¶¶ 17–23.)

During the periods Plaintiff worked at multiple restaurants, he generally split his time by

---

[4] The restaurant is currently called Kiin, but it used to be called Cafetasia. (Guaraca Decl. ¶ 35 n.3.)

working a portion of the week at Somtum Der, and a portion of the week at one or more of the other restaurants. (Guaraca Decl. ¶¶ 5–12.) The precise split of days worked at each restaurant changed over time. (*Id.*)

Plaintiff's Declaration provides a detailed history of his employment at the different restaurants. According to Plaintiff, he was initially hired by an unnamed individual to work at Somtum Der as a dishwasher. (*Id.* ¶ 24.) About three months after he was hired, a chef named Piton came to work at Somtum Der as the head chef. (*Id.* ¶ 25.) Piton was also the head chef at Lantern Second Avenue at the time, and he spent at least one month as the head chef at both restaurants. (*Id.*) Piton supervised Plaintiff at Somtum Der and was responsible for Plaintiff's work schedule. (*Id.*) On at least one occasion, on one of Plaintiff's days off at Somtum Der, Piton asked Plaintiff to fill in for an absent dishwasher at Lantern Second Avenue. (*Id.*) After about one or two months, Piton was replaced as the head chef at Somtum Der by an individual named Jimmy. (*Id.* ¶ 26.) Piton remained head chef at Lantern Second Avenue, but he would continue to observe and supervise at Defendants' other restaurants. (*Id.* ¶ 27.)

In approximately July 2013, Plaintiff was hired to work at Lantern Second Avenue. (*Id.*) Piton told Jimmy that he needed a delivery worker at Lantern Second Avenue, and the two arranged for Plaintiff to work at Lantern Second Avenue for one day per week. (*Id.*) For about the next year, Plaintiff worked five days a week at Somtum Der, and Fridays for part of the day at Lantern Second Avenue and part of the day at Somtum Der. (*Id.*)

Around August 2014, Somtum Der closed for renovations. (*Id.* ¶ 28.) Plaintiff claims that during this month, Jimmy and Piton arranged for him to work only at Kiin because it was part of the same restaurant as Somtum Der. (*Id.*) Defendants dispute this fact, claiming that Plaintiff only worked at Kiin during one week in January 2016. (Kitmahawong Aff. ¶ 10;

4

Sirisuwat Aff. ¶ 10). Plaintiff also claims that when he worked at Kiin, he saw Piton there approximately twice per week supervising how food was being cooked. (Guaraca Dec. ¶ 28.) Around September 2014, Somtum Der reopened, and Plaintiff returned to work there and at Lantern Second Avenue. (*Id.* ¶ 29.)

Over the next three years, Jimmy and Piton changed Plaintiff's work schedule on several occasions. (*Id.* ¶¶ 30–34.) In approximately April 2015, Jimmy informed Plaintiff that he no longer needed Plaintiff to work as many days as he was working at Somtum Der, but that he could arrange with Piton for Plaintiff to work those days at Lantern Second Avenue instead. (*Id.* ¶ 30.) Around January 2016, Plaintiff returned to his previous work schedule after Jimmy informed him that he had discussed the schedule change with Piton. (*Id.* ¶ 31.) Plaintiff's schedule changed again in March 2016, when Jimmy informed him that he no longer needed Plaintiff to work Sundays at Somtum Der. (*Id.* ¶ 32.) Jimmy told Plaintiff that the "boss" needed someone to work Sundays at Lantern Montague, and Plaintiff agreed to take that shift. (*Id.*) Jimmy and Kevin, the head chef at Lantern Montague, then arranged for Plaintiff to work Sundays at Lantern Montague. (*Id.*) In September 2016, Jimmy informed Plaintiff he could return to working Sundays at Somtum Der, and Plaintiff stopped working at Lantern Montague. (*Id.* ¶ 33.) Finally, around January 2017, Plaintiff's schedule was changed once again so that he worked three full days and two evening shifts at Somtum Der and one full day and one evening shift at Lantern Second Avenue. (*Id.* ¶ 34.) According to Plaintiff, Jimmy told him that the change was being made "because the owners did[ not] want [Plaintiff] to work too many hours at any one location because they did not want to have to pay [him] a lot of overtime." (*Id.*)

Other employees also worked at multiple locations of Defendants' restaurants. Plaintiff states that he knows of two such individuals: Juana Pilco, who worked at Somtum Der, Kiin,

5

and Lantern Montague during 2016 and 2017, and Esteban Nugzhi, who worked at Kiin and Somtum Der during 2016 and 2017.  (*Id.* ¶ 35.)  During the course of discovery, Plaintiff identified at least six other employees who simultaneously worked at one or more of the restaurants from approximately 2015 through approximately 2017.  (Androphy Decl. Ex. 2.)[5] Plaintiff also identified at least eleven additional employees listed on Defendants' tax forms who worked at one or more of the restaurants from approximately 2012 through approximately 2017.  (*Id.* Exs. 5–7.)

Defendants Kitmahawong and Sirisuwat assert that while Plaintiff was working at multiple restaurants, his work at each restaurant was overseen and supervised by different managers.  (Kitmahawong Aff. ¶ 14; Sirisuwat Aff. ¶ 14.)  In addition, Defendant Kitmahawong claims that while Plaintiff was working at Somtum Der, Lantern Montague, and Kiin, Defendant Kitmahawong had no control over Plaintiff's duties and did not direct his employment.  (Kitmahawong Aff. ¶¶ 13–14.)  Even at Lantern Second Avenue, the restaurant in which Defendant Kitmahawong is principally involved, Defendant Kitmahawong was not involved in setting Plaintiff's schedule.  (*Id.* ¶ 14.)  Similarly, Defendant Sirisuwat claims that while Plaintiff was working Kiin, Somtum Der, and Lantern Second Avenue, Defendant Sirisuwat had no control over Plaintiff's duties and did not direct his employment.  (Sirisuwat Aff. ¶¶ 13–14.)

During the span of his employment, Plaintiff, on many occasions, would take chicken from Somtum Der to Kiin, grind it using the machine at Kiin, and take it back to Somtum Der.  (Guaraca Decl. ¶ 36.)  Plaintiff observed another employee frequently do the same thing.  (*Id.* ¶ 37.)  Plaintiff also observed another employee taking delivery bags, supplies, and ingredients

---

[5] "Androphy Decl." refers to the Declaration of Joshua S. Androphy in Opposition to Defendants' Motion for Summary Judgment and to Sever, filed January 24, 2018.  (Doc. 54.)

6

between restaurants. (*Id.*) Generally, Plaintiff observed that if one restaurant was lacking in an item, it would obtain that item from one of the other restaurants. (*Id.*) However, according to Defendants Kitmahawong and Sirisuwat, the Corporate Defendants do not share goods or services, nor do they buy supplies together. (Kitmahawong Aff. ¶ 6; Sirisuwat Aff. ¶ 6.)

Lantern Second Avenue and Lantern Montague share a website: www.lanternthai.com. (Androphy Decl. Ex. 1.) The website describes Lantern as "sitting in the heart of New York City's quintessential neighborhood—Brooklyn Heights and Gramercy Park." (*Id.*) It links to the menus for both Lantern Second Avenue and Lantern Montague, lists the hours for both locations, and provides the phone number, address, and location on a map for both locations. (*Id.*) Finally, the website invites visitors to "Checkout our sister restaurant website," and links to the websites for Kiin and Somtum Der. (*Id.*) Defendant Kitmahawong solely operates the website. (Androphy Decl. Ex. 3, at 53:8-21.)

## II. **Procedural History**

Plaintiff filed this action on February 28, 2017. (Doc. 1.) Defendants Sirisuwat, Kitmahawong, and Cafetasia filed Answers on July 5, 2017. (Docs. 40–42.) On July 15, 2017, prior to the completion of discovery, Moving Defendants filed the extant motion and supporting papers. (Docs. 43–46.) Plaintiff requested an extension of the discovery deadline and the deadline to oppose Moving Defendants' motion on November 9, 2017, (Doc. 49), which I granted, (Doc. 50). Plaintiff filed his opposition and supporting papers on January 23 and 24, 2018. (Docs. 51–54.) Moving Defendants filed their reply on February 6, 2018. (Doc. 55.)

## III. **Legal Standards**

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

7

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine[]' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence

in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587. "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party," summary judgment must be denied. *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

## IV. Discussion

Moving Defendants move for partial summary judgment on two issues: (1) whether the Corporate Defendants qualify as joint employers of Plaintiff; and (2) the liability of Defendants Sopochana, Kittigron, and Leathers. (Doc. 43.) Moving Defendants also move to sever the claims against the Corporate Defendants. (*Id.*)

Plaintiff does not oppose Moving Defendants' motion for partial summary judgment on the issue of the liability of Defendants Sopochana, Kittigron, and Leathers. (Pl.'s Opp. 2.)[6] As such, because there are no material issues of fact concerning the liability of Defendants Sopochana, Kittigron, or Leathers, Moving Defendants' motion is granted, and Defendants Sopochana, Kittigron, and Leathers are dismissed from this action.[7] I address the remaining

---

[6] "Pl.'s Opp." refers to Plaintiff's Memorandum of Law in Opposition to Motion for Summary Judgment and to Sever, filed January 23, 2018. (Doc. 51.)

[7] In their Reply Memorandum, Moving Defendants appear to argue, for the first time, that I should also grant summary judgment on the issue of liability of Defendants Kitmahawong and Sirisuwat because they did not exercise operational control over the employees of their restaurants. (Doc. 55, at 7–8.) As an initial matter, I decline to reach this issue because this argument was raised for the first time in reply. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *United States v. Letscher*, 83 F. Supp. 2d 367, 377 (S.D.N.Y. 1999) ("[A]rguments raised in reply papers are not properly a basis for granting relief."). In addition, Defendants Kitmahawong and Sirisuwat did not move for summary judgment, (*see* Defs.' Mem. 1), and the Moving Defendants moved for summary judgment as to the issue of liability only with respect to Defendants Sopochana, Lirtpanaruk, and Leathers, (*see id.* at 7; Doc. 43). As such, I decline to reach the issue of the liability of Defendants Kitmahawong and Sirisuwat.

issues of joint employment and severance in turn.

### A. *Joint Employment*

#### 1. Applicable Law

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C.A. § 203(d). To "employ" someone under the statute means to "suffer or permit to work." *Id.* § 203(g). Recognizing the "broad coverage" required to accomplish the FLSA's goals, the Supreme Court "has consistently construed the Act liberally to apply to the furthest reaches consistent with congressional direction." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 (2d Cir. 2013) (citation omitted).

The Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield*, 537 F.3d 132, 141 (2d Cir. 2008). Courts generally determine whether an employer-employee relationship exists under the FLSA by assessing the "economic reality" of a particular employment situation. *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). In ascertaining the economic reality, courts have employed various factors to analyze different employment situations. For example, in *Carter*, the Second Circuit applied a four-factor test to determine whether a community college employed certain prison inmates under the FLSA. *Id.* The factors included "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citation omitted). In *Zheng*, the Second Circuit applied a separate multi-factor test

---

"Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Motion for Summary Judgment, filed July 15, 2017. (Doc. 45.)

10

to determine whether a manufacturer exercised "functional control" over the laborers of subcontractors who contracted with the manufacturer. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003). The factors included:

> (1) whether [defendants'] premises and equipment were used for the plaintiffs' work; (2) whether the Contractor Corporations had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [defendants'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendants] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendants].

*Id.* at 72. No set of factors provides an exhaustive list of considerations that a court must take into account; rather, the various factors identified by the Second Circuit "ensure that the economic realities test . . . is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Barfield*, 537 F.3d at 143.

Here, Plaintiff alleges that the Corporate Defendants were joint employers. Joint employers may either be vertical joint employers or horizontal joint employers. *Murphy v. Heartshare Human Servs. of N.Y.*, 254 F. Supp. 3d 392, 396 (E.D.N.Y. 2017). Vertical joint employment involves situations in which an employee for an intermediary employer is "economically dependent on another employer." *Id.* (quoting United States Department of Labor, Administrator's Interpretation No. 2016-1, Opinion Letter Fair Labor Standards Act (FLSA), 2016 WL 284582, at *4). Horizontal joint employment involves situations where "two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee." *Id.* at 397 (quoting Opinion Letter, 2016 WL 284582, at *4). "The focus of a horizontal joint employment analysis is the relationship between the two (or more) employers." *Id.* (quoting Opinion Letter, 2016 WL 284582, at *4).

Department of Labor regulations provide extensive guidance to assist in determining

whether two or more entities jointly employ an individual. In particular:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as: (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b). In addition, the Department of Labor has identified certain facts as relevant in "analyzing the degree of association between, and sharing of control by," joint employers:

- do the potential joint employers have any overlapping officers, directors, executives, or managers;

- do the potential joint employers share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs;

- are the potential joint employers' operations inter-mingled (for example, is there one administrative operation for both employers, or does the same person schedule and pay the employees regardless of which employer they work for);

- does one potential joint employer supervise the work of the other;

- do the potential joint employers share supervisory authority for the employee;

- do the potential joint employers treat the employees as a pool of employees available to both of them;

- do the potential joint employers share clients or customers; and

- are there any agreements between the potential joint employers.

Opinion Letter, 2016 WL 284582, at *7.

The determination of whether there is an employer-employee relationship is essentially identical under the FLSA and NYLL. *See Garcia v. La Revise Assocs. LLC*, No. 08 CIV 9356

LTS THK, 2011 WL 135009, at *5 (S.D.N.Y. Jan. 13, 2011) ("New York's 'employer' provisions are equally [as] broad [as the FLSA]."); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 (S.D.N.Y. 2010) ("Courts have interpreted the definition of employer under the New York Labor Law coextensively with the definition used by the FLSA." (citation omitted)). Therefore, courts in the Second Circuit "hold that the New York Labor Law embodies the same standards for joint employment as the FLSA." *Chen v. St. Beat Sportswear, Inc.,* 364 F.Supp.2d 269, 278 (E.D.N.Y.2005) (citing cases). "Because of the fact-intensive character of a determination of joint employment," courts rarely resolve the issue on a motion for summary judgment. *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d at 143.

### 2. Application

Plaintiff asserts that Defendants' motion for partial summary judgment should be denied because the Corporate Defendants were horizontal joint employers of Plaintiff. (Pl.'s Opp. 8.) Because of the extent to which the Corporate Defendants shared resources and coordinated to set Plaintiff's work schedule, I find that there are genuine issues of material fact concerning whether the Corporate Defendants were joint employers. Therefore, Defendants' motion for summary judgment is denied.

As noted by the Department of Labor, the pivotal issue in determining whether two or more employers are horizontal joint employers is "the relationship between the two (or more) employers." Opinion Letter, 2016 WL 284582, at *4. In particular, horizontal joint employment "may exist when two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee." *Id.* Defendants argue that because the Corporate Defendants each have separate corporate forms, separate Federal Employment Identification numbers, separate bank accounts, and separate

13

payroll records—all of which is undisputed—they are not joint employers. (Defs.' Mem. 3–4.) While these facts are certainly relevant to the question of whether or not the Corporate Defendants are joint employers, they are not dispositive. *See Murphy*, 254 F. Supp. 3d at 403–04 (finding that two employers were joint employers despite having distinct corporate forms, issuing separate paychecks and employment benefits, and having separate hiring and firing processes).

Plaintiff has presented sufficient evidence that the Corporate Defendants were associated with each other in connection with Plaintiff's employment to survive summary judgment. Department of Labor regulations state that where an employee "works for two or more employers during the workweek, a joint employment relationship generally will be considered to exist . . . [w]here there is an arrangement between the employers to share the employee's services." 29 C.F.R. 791.2(b). Here, Plaintiff states that managers at the restaurants—primarily Jimmy and Piton—coordinated with each other to divide Plaintiff's work schedule so that he could fill shifts at multiple restaurants during the week as needed. (Guaraca Aff. ¶¶ 25, 27, 28, 30–34.) For example, in April 2015, Jimmy, in coordination with Piton, transferred some of Plaintiff's shifts from Somtum Der to Lantern Second Avenue when Jimmy no longer needed Plaintiff to work as many days at Somtum Der. (*Id.* ¶ 30.) In March 2016, Jimmy—after coordinating with the head chef at Lantern Montague—told Plaintiff that he would now work Sundays at Lantern Montague because the "boss" needed someone to work there on those days. (*Id.* ¶ 32.) Similarly, around January 2017, Jimmy redistributed Plaintiff's shifts between Somtum Der and Lantern Second Avenue because the owners did not want Plaintiff to earn overtime by working too many hours at any one restaurant. (*Id.* ¶ 34.) A reasonable jury could interpret these acts of coordination as "an arrangement between the [Corporate Defendants] to

share [Plaintiff's] services," 29 C.F.R. 791.2(b), sufficient to find the Corporate Defendants were joint employers.[8]

Plaintiff also presents evidence relevant to additional Department of Labor guidance on the question of horizontal joint employment. For example, the restaurants share common and overlapping owners, Opinion Letter, 2016 WL 284582, at *7, as Kitmahawong and Sirisuwat each own 50% of Somtum Der and Lantern Second Avenue, Kitmahawong owns 100% of Kiin, and Sirisuwat owns 100% of Lantern Montague, (Counter 56.1 ¶¶ 2–3, 6–7, 10–11; Kitmahawong Aff. ¶ 2; Sirisuwatpara ¶ 2). In addition, there is evidence that the restaurants "have . . . overlapping officers, directors, executives, or managers," Opinion Letter, 2016 WL 284582, at *7, in that Piton simultaneously worked for multiple of the restaurants at different times, (Guaraca Decl. ¶¶ 25, 27, 28). There is also evidence that the restaurants "treat the employees as a pool of employees available to [all] of them," Opinion Letter, 2016 WL 284582, at *7, given the evidence of numerous employees apart from Plaintiff who worked simultaneously at the four restaurants during different time periods between 2012 and 2017, (*see* Guaraca Decl. ¶ 35; Androphy Decl. Exs. 2, 5–7). There is evidence that the restaurants, to some extent, "share control over operations" and that their "operations [are] inter-mingled," Opinion Letter, 2016 WL 284582, at *7, as they all jointly advertise on the Lantern website, (Androphy Decl. Ex. 2); Lantern Second Avenue and Lantern Montague use the same logo, (*id.* Ex. 3, at 54:4-10); Defendant Kitmahawong personally handles recordkeeping and payroll for Somtum

---

[8] I note that Plaintiff claims to have worked for one month at Kiin in August 2014, a time period during which he claims not to have worked at any other restaurant. (Guaraca Decl. ¶ 28.) If this is the only time period during which Plaintiff worked at Kiin, then Defendant Namjit Inc., which owns Kiin, cannot be said to be a joint employer of Plaintiff with the other Corporate Defendants, since Plaintiff did not work at any other restaurant while he worked at Kiin. However, Defendants assert that Plaintiff actually worked at Kiin in January 2016, a time period during which he was working at other restaurants. (Kitmahawong Aff. ¶ 10; Siriuwat Aff. ¶ 10.) As a result, there is at least a genuine issue of material fact as to when Plaintiff worked at Kiin, sufficient to defeat summary judgment.

15

Der, Kiin, and Lantern Second Avenue, (*id.* at 17:20-22:24, 26:23-30:3, 36:3-37:13); all the restaurants use the same accountant, (*id.*; *id.* Ex. 4, at 18:7-21:2); and the restaurants use some of the same machinery and share some supplies, (*id.* Ex. 3, at 54:4-10; Guaraca Decl. ¶ 36).

Defendants attempt to analogize this case to *Paz v. Piedra*, No. 09 Civ. 03977 (LAK) (GWG), 2012 WL 12518495 (S.D.N.Y. Jan. 12, 2012), which held that four corporate defendants owning separate restaurants were not joint employers of the plaintiffs, four of whom worked for multiple of the restaurants during various time periods. However, *Paz* is distinguishable in at least two material ways. First, the plaintiffs in *Paz* were moving for summary judgment on the joint employment issue, *id.* at *1, and thus, the plaintiffs there had a higher burden than Plaintiff here since the Court reviewed the evidence in the light most favorable to the defendant and could only grant summary judgment for plaintiffs if it determined that "no reasonable trier of fact could find in favor of the [defendant]," *see Allen v. Coughlin*, 64 F.3d at 79; *see also Matsushita*, 475 U.S. at 587. Second, the court in *Paz* noted that "Plaintiffs have provided no evidence . . . that one Corporate Defendant supervised and controlled the work schedules or work conditions of another's employees." *Paz*, 2012 WL 12518495, at *6. Here, as discussed above, there is evidence that Plaintiff's managers at different restaurants coordinated with each other to allocate Plaintiff's time between restaurants. *Paz*, therefore, is inapposite.

Therefore, Moving Defendants' motion for partial summary judgment on the issue of joint employment of Plaintiff by the Corporate Defendants is denied.

### B. *Severance*

In addition to their motion for partial summary judgment, Moving Defendants move to sever Plaintiff's claims against the Corporate Defendants pursuant to Federal Rule of Civil

Procedure 21 or 42(b), and seek separate trials for each Corporate Defendant. Federal Rule of Civil Procedure 21 states that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever a claim against a party." Fed. R. Civ. P. 21. Federal Rule of Civil Procedure 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

Courts have discretion in deciding whether to sever claims or grant separate trials. *See Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir. 1988); *Whalen v. CSX Transportation, Inc.*, 13 Civ. 3784 (LGS)(HBP), 2016 WL 4787337, at *5 (S.D.N.Y. Sept. 14, 2016). Courts consider the following factors in determining whether severance is appropriate: "(1) whether the claims arise out of the same transaction or occurrence, (2) whether the claims present common questions of fact or law, (3) whether severance would serve judicial economy, (4) prejudice to the parties caused by severance, and (5) whether the claims involve different witnesses and evidence." *Whalen*, 2016 WL 4787337, at *6.

Defendants argue that severance is appropriate here because Plaintiff brings essentially four separate claims against four separate employers. However, because I deny Moving Defendants' motion for summary judgment on the issue of joint employment, that issue is still open for a jury to consider based on facts presented at trial. Holding separate trials for the different Corporate Defendants would present significant challenges with respect to the presentation of evidence, result in unnecessary duplication of evidence, and create the risk of inconsistent verdicts. Therefore, I find that granting severance would significantly impede judicial economy. As a result, I decline to sever Plaintiff's claims or to sever a future trial.

17

## V. Conclusion

For the foregoing reasons, Moving Defendants' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART. Specifically, Moving Defendants' motion is granted with respect to Plaintiff's claims against Defendants Sopochana, Kittigron, and Leathers, and they are dismissed from this action. Moving Defendants' motion is denied with respect to the issue of joint employment of Plaintiff by the Corporate Defendants. In addition, Moving Defendants motion for severance is DENIED.

Within thirty (30) days of the entry of this Opinion & Order, the remaining parties shall submit a joint pretrial order in accordance with Rule 6(A) of my Individual Rules & Practices in Civil Cases. On the same date, the parties shall also propose trial dates and a schedule for pretrial submissions pursuant to Rule 6(B) of my Individual Rules & Practices in Civil Cases.

The Clerk of Court is respectfully directed to terminate the open motion at Document 43. SO ORDERED.

Dated: September 20, 2018
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge